IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DANIEL POSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.:  2:15-cv-787-WKW-WC |
| | ) | |
| HYUNDAI MOTOR | ) | |
| MANUFACTURING ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is Defendant's Renewed Motion for Judgment on the Pleadings (Doc. 40).  Plaintiff filed his Opposition (Doc. 42) to the motion, and Defendant filed a Reply (Doc. 43).  The District Judge referred this matter to the undersigned Magistrate Judge "for consideration and disposition or recommendation on all pretrial matters as may be appropriate." *See* Order (Doc. 7).  The instant motion is ripe for recommendation to the District Judge.  For all of the following reasons, the undersigned Magistrate Judge hereby RECOMMENDS that Defendant's motion be granted in part and denied in part.

## I.    BACKGROUND

On March 18, 2016, Plaintiff filed his Amended Complaint (Doc. 37) alleging two causes of action under the Americans with Disabilities Act ("ADA").[1]  Specifically, Plaintiff alleges that Defendant discriminated against him on the basis of his disability,

---

[1]    For a description of the procedural developments preceding the filing of the Amended Complaint, see the undersigned's Recommendation (Doc. 36) of March 11, 2016, which was adopted, without objection, by the District Judge on April 4, 2016. *See* Order (Doc. 39).

Chron's Disease, when it terminated his employment on December 1, 2014. *See* Am. Compl. (Doc. 37) ¶¶ 50, 52. Plaintiff also alleges that Defendant denied him a reasonable accommodation—temporary, intermittent leave for days missed due to his Chron's—when he requested such leave after certain absences preceding his termination. *See id.* at ¶¶ 44, 54. On April 1, 2016, Defendant filed its Answer (Doc. 38), and on April 4, 2016, the instant Renewed Motion for Judgment on the Pleadings.

## II.   DEFENDANT'S ARGUMENT

Defendant argues that it is entitled to judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, because Plaintiff's claims under the ADA are untimely. Specifically, Defendant argues that Plaintiff "failed to file his EEOC Charge within the required 180-day period of his last alleged discriminatory act respecting leave or request denial." Def.'s Mot. (Doc. 40) at 1 (citation and footnote omitted).

## III.   STANDARD OF REVIEW

Rule 12(c) reads as follows: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings under Rule 12(c) is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Flanigan's Enterprises, Inc. of Ga. v. City of Sandy Springs, Ga.*, 831 F.3d 1342, 1345 (11th Cir. 2016) (quotation omitted). The court is to "accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party." *Id.* (quotation omitted). "However, 'the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court

accept legal conclusions cast in the form of factual allegations.'" *S.W. v. Clayton Cty. Pub. Schls.*, __ F. Supp. 3d __, __, 2016 WL 2755607, at *4 (N.D. Ga. May 12, 2016) (quoting *Koval v. M.C.I. Commchs. Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  "A complaint may only be dismissed under Rule 12(c) if it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations." *Flanigan's Enterprises, Inc. of Ga.,* 831 F.3d at 1345.

In considering a motion for judgment on the pleadings, the court looks only to the pleadings that have been filed, *i.e.*, the complaint and the answer.  *Freeman v. Koch Foods of Ala.*, 777 F. Supp. 2d 1264, 1274 (M.D. Ala. 2011) (citation omitted).  Where "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56[,]" and the "parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  However,

> [a] court may consider documents attached to the complaint or incorporated by reference without converting the motion into a motion for summary judgment if the documents are: (1) central to the complaint, and (2) the documents' authenticity is not in dispute.  Documents attached to the pleadings as exhibits are considered a part of the pleading, Fed. R. Civ. P. 10(c), and may be considered by the court without converting the Rule 12(c) motion to a motion for summary judgment.

*Eisenberg v. City of Miami Beach*, 54 F. Supp. 3d 1312, 1320 (S.D. Fla. 2014) (citation omitted).  This rule applies with equal force to documents attached to an answer to the complaint.  *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).  Accordingly, in reviewing Defendant's 12(c) motion, the court may consider the Amended Complaint

(Doc. 37), the Answer (Doc. 38) to the amended complaint, and any exhibits attached to such documents that are central to Plaintiff's claims and are undisputed.

## IV.   DISCUSSION

### A.   Plaintiff's Failure to Accommodate Claim

The factual allegations respecting Plaintiff's failure to accommodate claim are summarized as follows: Defendant is an automotive manufacturer who relies on a third party administrator, The Hartford, "in order to fulfill its obligation . . . to engage in an 'interactive process' with 'a qualified individual with a disability' regarding such individual's need for leave as a reasonable accommodation for a disability" (Doc. 37 at ¶ 6); although The Hartford does not evaluate whether a request for medical leave also constitutes a request for a reasonable accommodation, Defendant utilizes The Hartford's determination about requests for medical leave in deciding whether it will grant a reasonable accommodation to an employee requesting leave due to a disability (*id.* at ¶¶ 7-8); the "effect of this is that a disabled employee, who, because of tenure, hours worked, exhaustion of leave or other circumstances is not entitled to leave under the [Family Medical Leave Act] and its implementing regulations, will not be afforded leave as a reasonable accommodation for his or her disability under the ADA" (*id.* at ¶ 11); Defendant employs a progressive disciplinary policy which covers violations of the company attendance policy (*id.* at ¶ 15); the attendance policy excludes FMLA leave as absences deserving of corrective action under the progressive disciplinary policy (*id.* at ¶ 15); due to his Crohn's, Plaintiff "required the reasonable accommodation of intermittent, temporary leaves of absence in order to perform the essential functions of his position" (*id.* at ¶ 22);

"Plaintiff sought leave on a number of occasions for his Crohn's disease[,]" starting in May of 2013 (*id.* at ¶¶ 23 & 24); at least four of five such requests by Plaintiff were denied by The Hartford with no further "interactive process" on the part of Defendant or The Hartford (*id.* at ¶¶ 28-29); as a result of the accumulation of absences for which he was denied medical leave, Plaintiff reached a level in Defendant's progressive disciplinary policy, Phase III, that required him to compose a "commitment letter" on June 3, 2014 (*id.* at ¶ 30); in doing so, he "reiterate[ed] his previous accommodation requests" by requesting that the "discipline be removed from his file" (*id.*);[2] "Plaintiff did not hear back from Defendant

---

[2]    Defendant attached to its answer to the amended complaint the form it utilizes for the "Commitment Discussion" in Phase III discipline.  *See* Doc. 38, Ex. 2.  The form describes the reasons Plaintiff was placed in Phase III and provides a space for him to author his commitment letter.  The authenticity of this document is not disputed by Plaintiff, and it is central to Plaintiff's complaint.  Thus, it is incorporated into the pleadings before the court for purposes of this motion. *See Eisenberg*, 54 F. Supp. 3d at 1320.  The "Commitment Discussion" indicates that Plaintiff was placed in Phase II ("Formal Discussion") on May 27, 2014, due to his accumulation of unapproved absences.  Plaintiff reached Phase III, the "Commitment Discussion," when he was "late on May 30, 2014."  Doc. 38, Ex. 2.  In response, Plaintiff submitted his commitment letter, which reads as follows:

> I was diagnose with Chron's disease about a year ago. Through this time of Illness I was hospitalized for internal bleeding for the period of one week. I almost died. I was out of work for 1 month. Julie Pitts, Jay Burns, and Hartford was notified and sent documentation to back this. After I return to work I was notified that I was approved. November-December came, then I was told I was denied By Hartford and It was to late to get paperwork filled out correctly. I was put in phase I by Jay Burns / Team Relations. Around Mid-May I had flare up and complications again. My Dr. done procedure to make sure I wasn't Bleeding again and corrected my medicine. Julie Pitts, Rick Henley and Hartford was contacted. FMLA was Approved. I was notified one week ago that it was denied because paperwork hasn't been received. But It was to late to turn it in after I sent it in personally after I was notified. I was put into Phase II for Attendance. I have been on time, and committed to my job for 9 years. I am going to do and make extra effort to show up to my job as I have been. And give 150% to my team daily. But I feel that I have been punished for my sickness because of HARTFORD. And I also feel that since I have documentation this should be removed from my file. As of this day I pledge to have

in response to his commitment letter, but believed that his request had been granted" (*id.* at ¶ 31); and Plaintiff was subsequently terminated when he had another unexcused absence on November 6, 2014 (*id.* at ¶ 33).

Defendant argues that it is entitled to judgment on the pleadings because Plaintiff's failure to accommodate claim is "time-barred because he failed to file a Charge of Discrimination with the EEOC within the 180-day period following the last alleged discriminatory act." Def.'s Mot. (Doc. 40) at 6. Defendant maintains that Plaintiff "never filed a Charge of Discrimination within 180 days of June 3, 2014, which was the date he learned his leaves would not be FMLA-covered and was disciplined for attendance infractions respecting such leaves." Def.'s Mot. (Doc. 40) at 6-7. Instead, Defendant asserts, "Plaintiff's Charge was received by the EEOC 224 days later on January 12, 2015." *Id.* at 7.

Plaintiff counters that "the interactive process regarding Plaintiff's leave requests had not concluded prior to his termination in November, 2014." Pl.'s Resp. (Doc. 42) at 4. In essence, Plaintiff asserts that the period from when he wrote his commitment letter in June 2014 to his termination in November 2014 cannot count toward the 180-day limitations period because Defendant did not respond to the letter and Plaintiff therefore reasonably believed that his purported request for accommodation in the letter— reconsideration of the decision to deny him excused medical leave—had been granted. In

---

perfect attendance, as I had, and work diligently with my team to get my Attendance Back to 100%.

Doc. 38, Ex. 2 (all grammar and punctuation in original).

other words, he was unaware that the "interactive process" regarding his June 2014 request for accommodation had broken down. Thus, he maintains, the Charge of Discrimination, as it pertains to the denial of a reasonable accommodation, was timely because it was filed within 180 days of the date of his termination, which is the date he alleges that he learned of the denial of his purported request for accommodation. *Id.* at 5.

Plaintiff's argument is problematic in that it misstates what may constitute a viable request for reasonable accommodation, such that the denial of said request causes a claim for failure to accommodate to accrue. Before addressing the specifics of Plaintiff's argument and related factual allegations, however, the undersigned will first briefly set out the legal context for evaluating Plaintiff's claim and Defendant's argument that it is untimely.

The Eleventh Circuit recently, and briefly, addressed the scope of an employer's duty to make reasonable accommodations under the ADA.

> The ADA requires an employer to make "reasonable accommodations" to an otherwise qualified employee with a disability, "unless doing so would impose [an] undue hardship [on the employer]." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001) (citing 42 U.S.C. § 12112(b)(5)(A) and 29 C.F.R. § 1630.9(a)). An accommodation is only reasonable if it allows the disabled employee to perform the essential functions of the job in question. *Id.* What constitutes a reasonable accommodation depends on the circumstances, but it may include "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position" among other things. 42 U.S.C. § 12111(9)(B).

> The employee has the burden of identifying an accommodation and demonstrating that it is reasonable. *Lucas*, 257 F.3d at 1255–56. Assuming she cannot do so, the employer has no affirmative duty to show undue hardship. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000). Moreover, an employer's "duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been

made." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363–64 (11th Cir. 1999) ("[T]he initial burden of requesting an accommodation is on the employee. Only after the employee has satisfied this burden and the employer fails to provide that accommodation can the employee prevail on a claim that her employer has discriminated against her.").

*Frazier-White v. Gee*, 818 F.3d 1249, 1255-56 (11th Cir. 2016).

As it regards Defendant's argument that Plaintiff's claims are time-barred, the court observes that, in order to bring claims under the ADA, a plaintiff "must first exhaust his administrative remedies, beginning with the filing of a charge of discrimination with the EEOC. In a non-deferral state, such as Alabama, a plaintiff must file an employment discrimination charge with the EEOC within 180 days after the date of the alleged discrimination." *Rizo v. Ala. Dept. of Human Res.*, 228 F. App'x 832, 835 (11th Cir. 2007) (citations omitted). "Failure to file a timely charge with the EEOC results in a bar of the claims contained in the untimely charge." *Id.* (citation omitted). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Hence, for each specific instance in which Defendant denied a requested accommodation, the statute of limitations as to that denial began running at the time Plaintiff was made aware of the denial. *See, e.g., Abram v. Fulton Cty. Gov't*, 598 F. App'x 672, 676 (11th Cir. 2015) (observing that all of the plaintiff's claims, "each of which alleged a specific instance of Fulton County's failure to grant her requested accommodations, involved discrete acts of alleged discrimination").

Considering all of the above, the court must examine the pleadings to determine what requests for reasonable accommodation were made and, importantly, when were they made. Plaintiff alleges in the amended complaint that he needs the reasonable

accommodation of "intermittent, temporary leaves of absence in order to perform the essential functions of his position." Am. Compl. (Doc. 37) at ¶ 22.  The amended complaint explicitly characterizes his requests for leave "on a number of occasions" due to his Crohn's Disease as "requests for reasonable accommodation."  *Id.* at ¶¶ 23, 44.  These requests occurred "on at least five separate occasions" between May 28, 2013, and May 19, 2014.  *Id.* at ¶ 28.  Plaintiff also appears to assert that his commitment letter, in which he explains he "reiterate[ed] his previous accommodation requests," *id.* at ¶ 30, constitutes a request for reasonable accommodation.  *See* Pl.'s Resp. (Doc. 42) at 11 (describing the commitment letter as a "renewed accommodation request").  Plaintiff also alleges that he made other requests for reasonable accommodation.  *See* Am. Compl. (Doc. 37) at ¶ 44 (alleging reasonable accommodation requests when Plaintiff "appealed his termination and requested continued employment[,]" when he had "contacts with The Hartford and Defendant's Medical Leave Team[,]" and "on other occasions").

Plaintiff does not dispute that he did not file his EEOC Charge of Discrimination within 180 days of the denial of any of the "five separate occasions" when he requested medical leave between May 28, 2013, and May 19, 2014.  Rather, as discussed above, Plaintiff argues that his failure to accommodate claim is not time-barred because, due to his purported request for accommodation in the commitment letter, the claim did not accrue until he finally learned that his request in the commitment letter was denied—when he was terminated—and he filed the Charge of Discrimination within 180 days of his termination.  Pl.'s Resp. (Doc. 42) at 5, 10-11.  However, as argued by Defendant, *see* Def.'s Reply (Doc. 43) at 5, and conceded by Plaintiff, *see* Am. Compl. (Doc. 37) ¶ 30, at most,

Plaintiff's commitment letter only "reiterated" his previous denied requests for leave for specific absences in the last year when he argued that such unexcused absences "should be removed from [his] file."  *Id.* at Ex. 2.  Importantly, the commitment letter did not assert that his May 30, 2014, tardy, which caused him to be placed in the Phase III "Commitment Discussion" phase of discipline, was related to his disability, did not request leave for any absence not previously covered by a prior leave request that was denied, and, significantly, did not request any sort of allowance for "intermittent leave" going forward.

Plaintiff's commitment letter makes clear that Plaintiff was told his medical leave requests were denied in "November-December" of 2013, and again in May of 2014, after another flair-up of his condition.  After both instances he was placed in an elevated disciplinary status.  Plainly, to the extent any denial of his request for leave could constitute a denial of a request for reasonable accommodation, such claims accrued when those discrete denials were made.  Plaintiff cites to no case law supporting his assertion that he essentially restarted the statute of limitations with respect to his accommodation denials simply by stating his belief that the prior unexcused absences should be "removed from [his] file," especially where Plaintiff's "reiterated" request presents no new information about his disability and does not concern any new accommodation denial that was not already encompassed by a prior employer action.  Nor does EEOC Guidance appear to support this assertion: "*Since reasonable accommodation is always prospective*, an employer is not required to excuse past misconduct even if it is the result of the individual's disability."  EEOC, Revised Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, 3 EEOC Notice 915.002 (Oct.

10

17, 2002), 2002 WL 31994335, at *25 (emphasis supplied).  A survey of case law, too, casts doubt on the viability of Plaintiff's argument.  *See, e.g., Delaware State Coll. v. Ricks*, 449 U.S. 250, 261 n.15 (1980) ("Mere requests to reconsider . . . cannot extend the limitations period applicable to the civil rights laws."); *Martin v. Sw. Va. Gas Co.*, 135 F.3d 307, 310 (4th Cir. 1998) ("An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination."); *Long v. Howard Univ.*, 512 F. Supp. 2d 1, 17 (D. D.C. 2007) (noting that "requests for reconsideration of a previously denied request" may not "revive a time-barred claim").  Thus, because there is no request within the commitment letter that Defendant should have reasonably interpreted as anything more than a request to reconsider its prior determinations on Plaintiff's leave requests, without the aid of any new information, the letter does not suffice as a request for reasonable accommodation for purposes of triggering a new 180-day limitations period when Plaintiff allegedly learned of the denial of his June 3 request upon his termination.

So, if the denials of requests for medical leave were not the subject of a timely Charge of Discrimination and the commitment letter's request to have those prior unexcused absences removed from his file did not have the effect of restarting the statute of limitations upon Plaintiff's termination, what, then, is left for purposes of establishing a timely failure to accommodate claim?  Plaintiff appears to offer other possible instances when he requested, and was denied, reasonable accommodations: "when he appealed his termination and requested continued employment; in his contacts with The Hartford and Defendant's Medical Leave Team; and on other occasions."  Am. Compl. (Doc. 37) at ¶ 44.  However, these alleged instances are not sufficient to foreclose judgment on the

11

pleadings.  First, with respect to Plaintiff's appeal of his termination, the undersigned notes that, despite the Amended Complaint's allegation that this too was a request for reasonable accommodation, Plaintiff's response in opposition to the motion for judgment on the pleadings does not formulate any argument that, indeed, the pleadings establish this as a separate and timely instance in which a request for reasonable accommodation was made. Furthermore, Plaintiff has offered no basis for a conclusion that his post-termination appeal constituted anything more than the sort of request to reconsider a prior decision that, pursuant to the authorities cited above, is insufficient to constitute a request for a reasonable accommodation.  In any event, even if Plaintiff had more robustly argued that his termination appeal was itself a request for reasonable accommodation, the undersigned concludes that any request for accommodation made after Plaintiff was terminated is insufficient.  This is so because a request to be re-employed after termination is not a request for reasonable accommodation.  *See McCarroll v. Somerby of Mobile, LLC*, 595 F. App'x 897, 899 (11th Cir. 2014) (finding no liability where specific request for accommodation was lodged after decision to terminate employee); *Alvarez v. Sch. Bd. of Broward Cty.*, ___ F. Supp.3d ___, ___, 2016 WL 6471332, at *3 (S.D. Fla. Sept. 21, 2016) (finding "Plaintiff's request for an accommodation of reinstatement was untimely.  The employee must make a request for accommodation while 'on the job,' not after the fact.") (citations omitted).

Apart from allegations respecting his various requests for FMLA leave which have already been discussed, the Amended Complaint does not clarify what other "contacts with [T]he Hartford and Defendant's Medical Leave Team" might constitute requests for

reasonable accommodation for purposes of applying the relevant limitations period or the dates when such requests occurred. Nor does Plaintiff's response in opposition appear to argue that there are additional "contacts" with those entities that might be relevant to the court's analysis. Finally, Plaintiff's allegation that he made requests for reasonable accommodation "on other occasions" is not entitled to deference. Plaintiff may not avoid judgment on the pleadings by offering the unadorned legal conclusion that he made requests for reasonable accommodations on "other occasions" while not providing any sufficiently detailed allegations describing those requests so that Defendant can respond to Plaintiff's allegations.

Given all of the above, the undersigned concludes that the pleadings do not establish that Plaintiff timely filed a Charge of Discrimination with respect to any denial of a request for reasonable accommodation. As such, Defendant is entitled to judgment on the pleadings on this claim unless Plaintiff is entitled to equitable tolling of the limitations period. To be sure, the requirement that an employee file a timely charge of discrimination with the EEOC is subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). However,

> [e]qutiable tolling is an extraordinary remedy to be applied sparingly, and is appropriate when a plaintiff untimely files due to extraordinary circumstances that are both beyond her control and unavoidable even with diligence. We have emphasized that equitable tolling typically requires some affirmative misconduct, such as fraud, misinformation, or deliberate concealment, and that ignorance of the law does not, on its own, satisfy the constricted extraordinary circumstances test.

*Horsley v. Univ. of Ala.*, 564 F. App'x 1006, 1008-09 (11th Cir. 2014) (citations and internal quotations omitted). In other words, in order to obtain equitable tolling of the

13

statute of limitations, the facts set forth in the pleadings must show that, in the 180 days preceding his filing of the Charge of Discrimination, Plaintiff had no reason to believe that he was a victim of unlawful discrimination. *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 660 (11th Cir. 1993). Failure to plead facts in the complaint establishing a right to equitable tolling forecloses the granting of such relief. *See, e.g., Horsley*, 564 F. App'x at 1009 (finding that equitable tolling was not appropriate where the plaintiff "asserted no facts in her complaint indicating that her untimely filing was the result of circumstances beyond her control and unavoidable with diligence"); *Brown v. Montgomery Surgical Ctr.*, No. 2:12-cv-553-WKW, 2013 WL 1163427, at *11 (M.D. Ala. March 20, 2013) ("And where the complaint's allegations facially demonstrate that the claim is untimely and omit allegations to support equitable tolling, the plaintiff generally cannot survive a motion to dismiss on tolling grounds.").

Plaintiff argues that he is entitled to equitable tolling because "an ADA defendant should not be allowed to deny an accommodation to a disabled employee without informing the employee of the denial, remain silent, then obtain dismissal based on a statute of limitations argument after it has terminated the employee as a result of denying him the accommodation." Pl.'s Br. (Doc. 42) at 12. As for the required factual allegations in the Amended Complaint supporting this argument, Plaintiff points to his allegations respecting his request in the commitment letter that previous unexcused absences be removed from his file, that he never heard back from Defendant about that request prior to his termination in November of 2014, and that he believed his request had been granted prior to his termination because he did not receive a response to the commitment letter. *See id.* (citing

14

Am. Compl. ¶¶ 30-31, 34).  He equates Defendant's alleged conduct in failing to respond to his request with "mis[leading] the plaintiff into allowing the statutory limitations period to lapse[.]"  *Id.* at 12-13; *id.* at 13 ("Because the ball was in Defendant's court to continue the interactive process as required by the ADA, Plaintiff had no reasonable way of discovering that Defendant had denied his accommodation request prior to his termination.").

As discussed above, the pleadings—which include the commitment letter itself—establish that Plaintiff's request in the commitment letter is, at most, simply a request that Defendant reconsider its decision to impose discipline for prior unexcused absences.  It does not present anything new with respect to Plaintiff's condition, does not assert that Plaintiff's May 30, 2014, tardy—which necessitated Plaintiff's authoring the commitment letter to begin with—was due to Plaintiff's condition, and does not request an accommodation that will allow Plaintiff to perform his job going forward.  As such, the letter was not a request for accommodation that should have alerted Defendant to any need to engage in any form of interactive process toward reaching a reasonable accommodation.[3]  To the extent Plaintiff was ignorant that, legally, his commitment letter was not a proper request for accommodation, or that, factually, no response from Defendant was due,[4] such

---

[3]   To the extent Plaintiff's Amended Complaint may be read as presenting a claim of failure to accommodate based upon the alleged failure of Defendant to engage in an "interactive process" in response to Plaintiff's commitment letter, *see, e.g.,* Doc. 37 at ¶¶ 45 & 48, Pl.'s Resp. (Doc. 42) at 10, such claim cannot escape judgment on the pleadings.  *See Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997) (denying plaintiff's argument that an employer may be "held liable merely for failing to engage in the process itself").

[4]   Nothing in the "Commitment Discussion" paperwork provided Plaintiff with a reasonable expectation that he would "hear back" from Defendant in response to his letter.  He was told that

ignorance is not a basis for the extraordinary remedy of equitable tolling. *See Horsley*, 564 F. App'x at 1009. Moreover, the commitment letter itself makes clear that, more than 180 days prior to Plaintiff's filing of his charge of discrimination, Plaintiff already believed that the previous denials of his requests for leave caused him to be the victim of unlawful discrimination. *See* Doc. 38, Ex. 2 ("But I feel that I have been punished for my sickness because of HARTFORD."). As such, the Amended Complaint does not contain factual allegations establishing any extraordinary circumstance deserving of equitable tolling of the 180-day limitations period.

## B. Plaintiff's Intentional Discrimination Claim.

The factual allegations respecting Plaintiff's intentional discrimination claim have been detailed previously in this Recommendation. In short, Plaintiff alleges that "Defendant's termination of Plaintiff was unlawful and constitutes intentional discrimination against a qualified individual on the basis of a disability, a perceived disability and/or a record of disability." Am. Compl. ¶ 50. He further claims that "Defendant treated non-disabled individuals more favorably than it treated Plaintiff, and non-disabled individuals either were not terminated or were reinstated when they appealed

---

he would be "required to write a Commitment Letter which should state your action plan to improve your attendance[,]" and that the letter and action plan was to be turned-in to his manager by the end of the next day's shift. Doc. 38, Ex. 2. Likewise, the employee handbook provides no reasonable basis for Plaintiff's alleged belief that Defendant would respond to his commitment letter. The description of the "Commitment Discussion" explains simply that the "Team Member will be required to write an action plan stating what actions he or she will take to resolve the performance problem[,]" and that the commitment letter, which should include the employee's action plan, "will remain in the Team Member's personnel file for a period of twenty-four (24) months." *Id.* If, after twenty-four months, the employee is able to correct the performance issue in accordance with the action plan, the commitment letter and action plan "will be removed from the Team Member's personnel file and will not be used for any future corrective action." *Id.*

their terminations." *Id.* at ¶ 51.  Defendant argues that this claim, too, is time barred "because the last time Plaintiff sought leave related to his alleged condition or received discipline was prior to June 3, 2014, over 180 days before his charge was filed."  Def.'s Mot. (Doc. 40) at 8.  Plaintiff argues that his discrimination claim, at least to the extent he alleges discriminatory termination, is timely because his termination was not required by Defendant's policies.  Pl.'s Resp. (Doc. 42) at 14-15 ("Plaintiff alleges that the discriminatory decision was made in November, 2014, when his employment was terminated, and that the termination decision itself was infected with status-based discrimination.").

Defendant's argument with respect to the timeliness of this claim is unavailing. There is no dispute that, within 180 days of his termination, Plaintiff filed a Charge of Discrimination with the EEOC which alleged, in part, that he was terminated because of his disability.  *See* Doc. 38, Ex. 1.  While Defendant argues that the last time Plaintiff "received discipline" relating in any way to his "alleged condition" was June 3, 2014, there can be no dispute that termination of employment is a form of discipline. In this case, Plaintiff's amended complaint very clearly alleges that he was terminated because of his disability and that Defendant treated similarly-situated non-disabled employees more favorably by either not terminating such employees or by reinstating them.  As such, on their face, the pleadings do not foreclose Plaintiff's claim of intentional discrimination related to his termination.

The cases Defendant cites in favor of its argument are not persuasive.  Defendant cites *United Airlines, Inc. v. Evans*, 431 U.S. 553, 558 (1977), in support of his argument

17

that Plaintiff "cannot raise a timely claim just because his June 2014 Phase III discipline placed him in peril of discharge for his next chargeable absence[.]"  Def.'s Mot. (Doc. 40) at 8-9.  Other cases are cited for the proposition that Plaintiff may not bring a claim for discrimination based on the "effect" of prior, uncharged discriminatory actions.  *Id.* at n.7.  But Defendant ignores that Plaintiff is not simply complaining of an acutely felt "effect" of prior discrimination; it is the unspoken contours of the "peril" Plaintiff faced that is the basis for his claim.  The court does not have anything before it in the pleadings showing that, indeed, there was no exercise of discretion when Plaintiff was terminated after apparently several intervening months of satisfactory attendance at his job.  To the extent that any decision to terminate Plaintiff was made by Defendant, it is precisely that decision that Plaintiff alleges was infected with discriminatory animus and was not similarly visited upon non-disabled persons with similar performance issues.

*Evans* is therefore distinguishable.  In that case, a flight attendant "was forced to resign because the airline refused to employ married flight attendants, but she did not file an EEOC charge regarding her termination."  *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 625 (2007).  After the airline changed its policy in collective bargaining, the plaintiff was rehired by the airline, but was treated as "a new employee for seniority purposes."  *Id.*   The plaintiff argued that, "while any suit based on the original discrimination was time barred, the airline's refusal to give her credit for her prior service gave 'present effect to [its] past illegal act and therefore perpetuate[d] the consequences of forbidden discrimination.'"  *Id.* (quoting *Evans*, 431 U.S. at 557).  The Court acknowledged the merit of the plaintiff's argument about the "present effect" of past illegal conduct, but

18

nevertheless emphasized that there must be a "present violation" alleged with respect to the seniority system in order to sustain the claim. *Evans*, 431 U.S. at 558. The plaintiff in *Evans* did not allege "that the system discriminated against former female employees or that it treats former employees who were discharged for a discriminatory reason any differently from former employees who resigned or were discharged for a nondiscriminatory reason[.]" *Id.* Instead, she essentially complained about the application of a seniority system that was "neutral in its operation." *Id.* Hence, because the plaintiff's complaint concerned the neutral operation of a seniority system that applied to all employees equally, but which detrimentally affected her due to a break in service caused by prior uncharged discrimination, the plaintiff could not sustain her claim of unlawful discrimination based on any "present effect" caused by application of the seniority system against her in the absence of a "present violation."

Here, Plaintiff's claim is different. Plaintiff is alleging a "present violation" in the form of a decision to terminate his employment that he asserts was motivated by animus toward his disability. Likewise, he is alleging that non-disabled employees were treated more favorably because they either "were not terminated or were reinstated when they appealed their terminations." Am. Compl. (Doc. 37) at ¶ 51. The plaintiff in *Evans* did not make similar allegations respecting the neutral application of the airline's seniority system. *See* 431 U.S. at 555 ("She has not alleged that any other rehired employees were given credit for prior service with United[.]"); *id.* at 558 (quoted *supra*). In other words, unlike the plaintiff in *Evans*, Plaintiff is alleging that Defendant's disciplinary policy was not applied neutrally, and that he was in fact treated disparately because of his disability.

19

Inasmuch as the pleadings might suggest a tough hill to climb for Plaintiff in proving his claim, the undersigned cannot conclude that the pleadings foreclose Plaintiff's ability to do so, much less that the entire effort is time-barred. Plaintiff filed a Charge of Discrimination within 180 days of his termination alleging that he was terminated because of his disability. He alleges in the Amended Complaint that the decision to terminate him was infected with discriminatory animus over his disability, and that non-disabled employees have been treated more favorably by Defendant. The pleadings are therefore sufficient for this claim to proceed.

## V.   CONCLUSION

For all of the foregoing reasons, the undersigned RECOMMENDS that Defendant's Renewed Motion for Judgment on the Pleadings (Doc. 40) be GRANTED in part and DENIED in part. Judgment on the pleadings should be granted in favor of Defendant, and against Plaintiff, with respect to Plaintiff's ADA failure to accommodate claims. With respect to Plaintiff's ADA intentional discrimination claim, judgment on the pleadings should be denied. It is further RECOMMENDED that this case be referred back to the undersigned Magistrate Judge for further proceedings. Finally, it is

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **February 7, 2017**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 24th day of January, 2017.


/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE