IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DANIEL POSEY,                           )
                                        )
              Plaintiff,                )
                                        )
       v.                               )          CASE NO. 2:15-CV-787-WKW
                                        )
HYUNDAI MOTOR                           )
MANUFACTURING ALABAMA,                  )
                                        )
              Defendant.                )

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

Plaintiff Daniel Posey brings this employment discrimination action against his former employer, Hyundai Motor Manufacturing Alabama (HMMA), under the Americans with Disabilities Act (ADA).  Posey alleges that HMMA punished and eventually fired him, at least in part, because of his disability: Crohn's Disease.  His complaint articulates two ADA theories under which he alleges HMMA is liable for its past conduct: (1) failure to accommodate Plaintiff's disability; and (2) intentional discrimination via wrongful termination.  (Doc. # 37, at 10–13.)

Plaintiff originally brought this claim against both HMMA and The Hartford Comprehensive Employee Benefit Services Company (Hartford), the third-party administrator responsible for managing FMLA leave requests for HMMA.  (Doc. # 1.)  However, Plaintiff voluntarily dismissed his claims against Hartford before the

filing of the instant motion.[1]  (Doc. # 31)  Before the court now is HMMA's Motion for Judgment on the Pleadings.  (Doc. # 40.)  The motion was fully briefed for the Magistrate Judge, who recommended that the court grant the motion as to Plaintiff's failure-to-accommodate claim and deny it as to his intentional discrimination claim. (Doc. # 46.)  Both parties objected to that assessment—Plaintiff arguing the motion should be denied in full (Doc. # 47) and Defendant arguing it should be granted in full (Doc. # 48).  After a thorough review of the record, the objections are due to be overruled; the Magistrate Judge's Recommendation is due to be adopted; and Defendant's Motion for Judgment on the Pleadings is due to be granted in part and denied in part for the reasons set forth below.

## II.  STANDARD OF REVIEW

### A.    For the Recommendation of a Magistrate Judge

The court reviews *de novo* a Magistrate Judge's recommendation to which objections have been filed.  28 U.S.C. § 636(b)(1).

### B.    For a Motion for Judgment on the Pleadings

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law."  *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (quoting *Cannon v. City of*

---

[1] Defendant does not disclaim liability for Hartford's actions.  The court thus assumes for purposes of this order that, to the extent Hartford acted wrongfully in its capacity as Defendant's third-party administrator, Defendant is liable.

*W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). When ruling on a motion for judgment on the pleadings, the court "accept[s] as true all material facts alleged in the non-moving party's pleading" and views those facts "in the light most favorable to the non-moving party." *Perez*, 774 F.3d at 1335. The "pleadings" include both the complaint and the answer, *see* Fed. R. Civ. P. 7(a), and "[a] copy of any written instrument which is an exhibit to a pleading," Fed. R. Civ. P. 10(c).[2] If the pleadings admit of any material dispute of fact, judgment on the pleadings must be denied. *Id.*

## III. FACTS

Plaintiff began working for Defendant on June 20, 2005, and in 2013 was diagnosed with Crohn's disease—a condition that causes chronic inflammation of the gastrointestinal tract. The symptoms of Crohn's disease—which include abdominal cramping and pain, diarrhea, nausea, fever, and loss of appetite, among other things—can be severe enough to require time off work. On at least five occasions between May 2013 and May 2014, Plaintiff applied for medical leave

---

[2] Here, in addition to the Amended Complaint (Doc. # 37) and Answer (Doc. # 38), the court considers three attachments that Defendant provided with the latter. The law on this is slightly more complicated, but no less clear: Courts may consider an attachment to an answer if the attachment is both "(1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1124, 1134 (11th Cir. 2002). "Undisputed" in this context only means that "the authenticity of the document is not challenged." *Id.* The court finds that the attachments to Defendant's answer in this case are central to Plaintiff's claim, and their authenticity is not challenged. Thus, all three exhibits are considered in the evaluation of Defendant's Motion for Judgment on the Pleadings.

under the Family Medical Leave Act (FMLA) because of Crohn's-related symptoms. On "at least four of these occasions," Hartford denied his leave requests for his failure to qualify under FMLA. (Doc. # 37, at 9.) Plaintiff contends that his requests for FMLA leave also constituted requests for reasonable accommodation under the ADA.

On May 27, 2014, due to poor attendance, management placed Plaintiff in HMMA's "Formal Discussion" phase of corrective action—the second step of the disciplinary procedure HMMA administers to absentee employees. It is used for "more serious performance issues" or "if a Team Member fails to correct an existing performance issue after receiving an Informal Discussion." (Doc. # 38, Exh. 3.) On June 3, 2014, after missing more work, management placed Plaintiff in the "Commitment Discussion" phase of corrective action, which is the third step of HMMA's disciplinary procedure. Plaintiff alleges that his absences, *i.e.*, the basis for the corrective action, were the result of his Crohn's disease.

Plaintiff soon found himself, after yet another Crohn's-related absence, in the third and final step of HMMA's corrective action program, which requires employees to write a "commitment letter" stating how they plan to fix whatever behavioral issues have landed them there. Plaintiff's commitment letter went above the call, containing not only a declaration of his commitment to improve his behavior

but also a bit of additional commentary that will become relevant later. The letter

from June 3, 2014, in full, reads:

> I was diagnose[d] with [Crohn's] disease about a year ago. Through this time of illness[,] I was hospitalized for internal bleeding for the period of one week. I almost died. I was out of work for 1 month. Julie Pitts, Jay Burns and Hartford [were] notified and sent documentation to back this. After I return[ed] to work[,] I was notified that I was approved. November-December came, then I was told I was denied by Hartford and it was to[o] late to get paperwork filled out correctly. I was put in Phase I by Jay Burns/Team Relations. Around mid-May I had a flare up and complications again. My [doctor did a] procedure to make sure I wasn't bleeding again and corrected my medicine. Julie Pitts, Rick Henley and Hartford [were] contacted. FMLA was approved. I was notified one week ago that it was denied because paperwork hasn't been received. But it was to[o] late to turn in after I sent it in personally after I was notified. I was put into Phase II for attendance. I have been on time, and committed to my job for 9 years. I am going to do and make extra effort to show up to my job as I have been. And I give 150% to my team daily. But I feel that I have been punished for my sickness because of HARTFORD. And I also feel that since I have documentation this should be removed from my file. As of this day I pledge to have perfect attendance, as I had, and work diligently with my Team to get my attendance back to 100%.

(Doc. # 38, at 28.)

On November 6, 2014, Plaintiff missed work again, this time for a reason

unrelated to his Crohn's disease. Because of the attendance points he had

accumulated, this absence resulted in termination. On January 12, 2015, after he

was fired, Plaintiff filed an EEOC charge in which he claimed, for the first time, that

HMMA had discriminated against him because of his disability. The bases for the

charge were HMMA's failure to accommodate Plaintiff's FMLA leave requests and

his later termination.   Thereafter, the EEOC issued a right-to-sue letter, and Plaintiff's charge blossomed into this lawsuit.

This case presents two issues.   The first is whether Plaintiff's failure-to-accommodate claim is time-barred, given that he filed his EEOC charge 224 days after the denial of his last formal request for FMLA accommodation.   The second is whether Plaintiff's wrongful termination claim can go forward despite the fact that his final absence—the one that ultimately caused HMMA to fire him—had nothing to do with his disability.   The court addresses each issue in turn.

## IV. DISCUSSION

To bring an ADA claim in federal district court, a plaintiff must first exhaust all administrative remedies, a necessary component of which includes the filing of charges with the EEOC.   *See Maynard v. Pneumatic Prods. Corp.*, 256 F.3d 1259, 1262 (11th Cir. 2001).   EEOC charges must be filed "within one hundred and eighty days after the alleged unlawful employment practice occurred."[3] 42 U.S.C. § 2000e-5(e)(1).   It is the plaintiff who carries "the burden of proving all conditions precedent to filing suit, including the condition that he timely filed with the EEOC."   *Maynard*, 256 F.3d at 1262.

---

[3] "[T]he period for filing a charge with the EEOC may be extended to 300 days if the complainant first files a timely charge in a state or local agency in a 'deferral state.'"   *Maynard*, 256 F.3d at 1262–63 (explaining the difference between "deferral" states and "non-deferral" states).   "Alabama is not a deferral state."   *Schweers v. Montgomery Public Schools*, 511 F. Supp. 2d 1128, 1135 (M.D. Ala. 2007).   Thus, the period for filing an EEOC charge is 180 days.

However, the untimely filing of an EEOC charge does not always kill an ADA claim.   Under the doctrine of equitable tolling, courts may "toll the statute of limitations until such a time that the court determines would have been fair for the statute of limitations to begin running on the plaintiff's claims." *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006).  "Equitable tolling is appropriate when a movant untimely files because of *extraordinary circumstances* that are both beyond his control and unavoidable even with diligence." *Id.* (quoting *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (emphasis added)).  As such, it is a remedy that "should be extended only sparingly." *Id.* (quoting *Justice v. United States*, 6 F.3d 1474, 1475 (11th Cir. 1993)).  The burden of establishing that equitable tolling is appropriate also lies with the plaintiff. *Id.*

After exhausting all administrative remedies, a plaintiff may seek redress for his ADA claim in federal district court.  Broadly speaking, the ADA prohibits employers from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Thus, to state a prima facie claim under the ADA, a plaintiff must allege: "(1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to

unlawful discrimination because of his disability." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255–56 (11th Cir. 2007).  The first two elements are not at issue.

As to the third element, there are several ways a plaintiff can show that his employer "unlawfully discriminated" under § 12112(a), two of which are relevant here.  First, an employer may unlawfully discriminate by "not making reasonable accommodations" for the disability of an employee (*i.e.*, a "failure-to-accommodate" claim).  *See* 42 U.S.C. § 12112(b)(5)(A).  Second, an employer may unlawfully discriminate by "discharg[ing]" an employee "on the basis of disability" (*i.e.*, an intentional discrimination claim based on a wrongful discharge).  *See* 42 U.S.C. § 12112(a).  Plaintiff makes both claims here.

## A.   <u>Plaintiff's ADA Claim for Failure to Accommodate</u>

Neither party disputes that Plaintiff filed his EEOC charge more than 180 days after the last time HMMA denied one of Plaintiff's formal requests for leave.  Thus, it would appear that he filed his charge late.  Not to go down without a fight, Plaintiff argues two ways around this.  First, he contends that his "commitment letter" contained an accommodation request to which HMMA did not adequately respond.  As a result, Plaintiff argues that the statutory clock for filing charges did not commence until his termination—*i.e.*, the moment he realized this last request had been denied.  Second, in the alternative, he argues that equitable tolling applies, and

he urges the court to hear his claim despite the late filing.  Both arguments fail to persuade.

### 1.    *Plaintiff's Letter Contained No New Accommodation Request*

The Magistrate Judge concluded that Plaintiff's commitment letter contained only a request to reconsider previously denied accommodation requests, and Plaintiff has offered nothing to undermine that conclusion.  The only contentions Plaintiff musters in response are inapposite.

First, Plaintiff claims that HMMA's bureaucratic relationship with Hartford, who handled Plaintiff's leave requests, made it reasonable for him to believe that his requests had not been fully considered under the ADA.  Thus, he argues, "a reasonable jury could infer that due to the bureaucracy involved, the full details of Plaintiff's disability-related need for intermittent leave had not been communicated to [HMMA] by [Hartford] prior to this time."  (Doc. # 47, at 13.)  Plaintiff further speculates that, under this theory, the commitment letter's request for HMMA to remove certain discipline from his file could have been one "that [HMMA] may have been hearing for the first time."  (Doc. # 47, at 13.)

Putting aside that it is based entirely on speculation, this argument fails to address the Magistrate Judge's conclusion that the commitment letter did not contain an accommodation request.  In other words, the problem with the commitment letter was not that Plaintiff had already asked for an expungement of his disciplinary

record, it was that such a request does not constitute a request for accommodation. (Doc. # 46, at 10–11.)  The closest Plaintiff's commitment letter comes to making an "accommodation request" is when it expresses Plaintiff's views that he had been "punished for [his] sickness" and that the absences "should be removed from [his] file."  (Doc. # 38, at 28.)   However, it is well-settled that "[m]ere requests to reconsider . . . cannot extend the limitations period applicable to civil rights laws." *Delaware State Coll. v. Ricks*, 449 U.S. 250, 261 n. 15 (1980).  Other courts have similarly noted that "requests for reconsideration of a previously denied request" may not "revive a time-barred claim."  *Long v. Howard Univ.*, 512 F. Supp. 2d 1, 17 (D.D.C. 2007).  The plain language of the commitment letter will not support the conclusion that Plaintiff was asking for anything but a reconsideration of requests that had been previously denied.  (Doc. # 38, at 28 ("I feel that I have been punished for my sickness . . . [and] that since I have documentation this should be removed from my file.").)  Therefore, the Magistrate Judge did not err in finding that "the letter does not suffice as a request for reasonable accommodation for purposes of triggering a new 180-day limitations period."  (Doc. # 46, at 11.)

Second, Plaintiff argues that, by failing to respond to the commitment letter, HMMA shrugged its responsibility to participate with Plaintiff in an "interactive process," wherein both parties in good faith attempt to settle on a proper accommodation for the plaintiff's disability.  (Doc. # 47, at 5–6.)  But again,

Plaintiff's argument relies on the false premise that his commitment letter contained a request for accommodation.  To the extent HMMA had refused to engage in the interactive process when it denied Plaintiff's prior requests for accommodation, Plaintiff may have had a valid ADA claim to bring on that basis.  However, the interactive process ended when HMMA denied Plaintiff's requests, and a claim based on that breakdown is now time-barred.  Unless Plaintiff establishes that he made another request for accommodation, he cannot now sue on the ground that HMMA failed to engage in an "interactive process" with him.  (Doc. # 47, at 8.)  A contrary holding would render meaningless the Supreme Court's declaration that "requests to reconsider . . . cannot extend the limitations period."  *Ricks*, 449 U.S. at 261 n. 15.  If Plaintiff's commitment letter, despite not making an accommodation request, enabled Plaintiff to sue based on Defendant's failure to engage in the interactive process, then it would have the effect of extending the limitations period on a time-barred claim.  As the court has already demonstrated, Plaintiff has failed to show that his commitment letter contained a request for accommodation.  Thus, Defendant's failure to respond is not actionable under the ADA, and the Magistrate Judge did not err in rejecting Plaintiff's second argument.

To the extent that the rest of Plaintiff's objections are recycled versions of the same basic argument—*e.g.*, that his claim was timely because of "the continuing nature of the interactive process" (Doc. # 47, at 4); or that the disciplinary process

11

he underwent should have been considered part of the interactive process (Doc. # 47, at 9–10); or that he was reasonable to expect HMMA to respond to his commitment letter (Doc. # 47, at 10)—they are severally overruled.

### 2.     *Equitable Tolling Does Not Apply*

The Magistrate Judge concluded that Plaintiff's "Amended Complaint does not contain factual allegations establishing any extraordinary circumstance deserving of equitable tolling." (Doc. # 46, at 16.) Plaintiff has failed to object to this conclusion. Accordingly, and because the court agrees that Plaintiff has failed to meet his burden of showing that this "extraordinary remedy" is warranted, *see Arce*, 434 F.3d at 1261 (explaining that "plaintiff bears the burden of showing that such extraordinary circumstances exist"), the Recommendation is due to be adopted.

### B.     <u>Plaintiff's ADA Claim for Intentional Discrimination</u>

Plaintiff's other ADA cause is based on the claim that HMMA discriminatorily discharged Plaintiff on the basis of his disability. As to this claim, the Magistrate Judge concluded that the pleadings are sufficient to state a cause of action and recommended denial of Defendant's Motion for Judgment on the Pleadings. Central to this recommendation was the conclusion that the primary case on which Defendant relies, *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977), is

distinguishable from Plaintiff's claim here.   Because the court agrees with the Magistrate Judge's assessment, the Recommendation is due to be adopted.[4]

Defendant argues that *Evans* entails the untimeliness of Plaintiff's claim.   In *Evans*, a female flight attendant sued her employer, United Air Lines, for gender discrimination under Title VII based on its refusal to credit her with seniority for the years of employment she logged prior to her discharge in 1968.   431 U.S. at 554.   At the time, United had "maintained a policy of refusing to allow its female flight attendants to be married."   *Id.*   When plaintiff married in 1968, United forced her to resign.   *Id.*   Subsequently, it was decided that United's policy violated Title VII; however, plaintiff did not file a discrimination claim in time to challenge her discharge.   *Id.* at 554–55.   The suit she eventually filed challenged United's seniority policy circa 1972, which did not credit the plaintiff for her prior employment.   The question was whether the present effect of the past discriminatory policy provided

---

[4] The only other argument raised in Defendant's objections is easily resolved.  Defendant appears to believe that, in order for Plaintiff to state a discrimination claim under the ADA, he must use the phrase "similarly-situated" in his pleadings.  However, Plaintiff uses different words to say the same thing.  (Doc. # 37, at 13 ("Defendant treated non-disabled individuals more favorably than it treated Plaintiff . . . .").)  In at least three instances the term "**similarly-situated**" is both <u>underlined</u> and **emboldened**.  (*See, e.g.*, Doc. # 48, at 4 (faulting Plaintiff's Amended Complaint because it "**NOWHERE** contains the essential '**similarly-situated**' phrase") (emphasis in the original).)  But, of course, the court does not judge a complaint based on whether or not a plaintiff uses whatever magic phrase might apply in a given case; a description of the same will suffice.  *See, e.g.*, *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) (listing factors for showing that comparators are "similarly-situated," but observing that "[t]his is not a 'magic formula,' however, and the similarly-situated inquiry should not devolve into a mechanical, 'one-to-one mapping between employees'").  Regardless, this issue should have been raised on a motion to dismiss and, instead, was raised for the first time in Defendant's objections.  It is therefore overruled.

plaintiff with grounds enough for a Title VII lawsuit, given that her claim on the policy itself was already time-barred.

The United States Supreme Court held that it did not. In deciding that the plaintiff had no valid Title VII claim, the Court said that a "discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed." *Id.* at 558. Thus, although "the seniority system gives present effect to a past act of discrimination," the present effect was not actionable because the past act was time-barred. *Id.*

Here, because the absence that ultimately got Plaintiff fired was unrelated to his disability, Defendant argues that Plaintiff's termination, like the seniority policy in *Evans*, only "g[ave] present effect" to the prior leave request denials that (conceding *arguendo*) may have been discriminatory. As in *Evans*, where the Court allowed the employer to treat the prior discriminatory act as "merely an unfortunate event in history which has no present legal consequences," *id.*, so Defendant argues the court here should not allow Plaintiff to bring an ADA claim on the basis of his termination.

Defendant's argument would be convincing if not for the fact that it ignores one of Plaintiff's key allegations, which distinguishes this case from *Evans*. In his Amended Complaint, Plaintiff alleges that "Defendant's articulated reason(s) for terminating Plaintiff . . . are a pretext for discriminating against him on the basis of

his disability, perceived disability, or record of disability." (Doc. # 37, at 10.) This stands in stark contrast to the seniority policy in *Evans*, which was not itself discriminatory. 431 U.S. at 558 (calling the policy "neutral in its operation"). Plaintiff's allegations here establish that, for purposes of a judgment on the pleadings, his termination was a discriminatory act in itself, not merely the effect of a past act of discrimination, and that it is actionable as such. Thus, while it is true that the "present effect" of a past action will not breathe new life into a time-barred claim, it is no less true that a new act of discrimination will give a plaintiff new cause for suit. This is precisely what Plaintiff alleges here. And, because Plaintiff's termination does not appear to be required by HMMA's disciplinary policies (*see* Doc. # 38, at 27 (advising employees that "failure to correct the problem *may* result in the termination of your employment")), his allegation that Defendant terminated him "on the basis of his disability" is plausible on its face.

## V.  CONCLUSION

For all of the foregoing reasons, it is ORDERED that Plaintiff's and Defendant's objections are OVERRULED; the Magistrate Judge's Recommendation is ADOPTED; and Defendant's Motion for Judgment on the Pleadings is GRANTED in part and DENIED in part, consistent with this opinion.

DONE this 22nd day of March, 2017.

_____
           /s/ W. Keith Watkins
    CHIEF UNITED STATES DISTRICT JUDGE